UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| OTIS NELSON, # 370686, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:09-cv-329 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| WILLIE O. SMITH, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This is a habeas corpus proceeding brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner was tried before a Kent County, Michigan, jury in March 2006 on a number of felony charges arising from an extraordinarily violent episode that took place in the City of Grand Rapids. The jury found petitioner guilty of two counts of first-degree home invasion, MICH. COMP. LAWS § 750.110a; three counts of armed robbery, MICH. COMP. LAWS § 750.529; two counts of kidnaping, MICH. COMP. LAWS § 750.349; two counts of assault with intent to murder, MICH. COMP. LAWS § 750.83; assault with intent to rob while armed, MICH. COMP. LAWS § 750.89, wearing body armor during the commission of a violent crime, MICH. COMP. LAWS § 750.227f; and ten counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. On April 12, 2006, Circuit Judge James Robert Redford sentenced petitioner as a third habitual offender, as follows: 20-to-40 years for each of the two home invasion convictions, to be served concurrently with each other but consecutively to any other sentence; concurrent terms of 25-to-60 years for two of the three armed robbery convictions, and 30-to-60 years for the third armed robbery conviction;

a concurrent term of life imprisonment (with the possibility of parole) for each of the two kidnaping convictions; concurrent terms of life imprisonment (with possibility of parole) for each of the two convictions for assault with intent to murder; concurrent terms of 30-to-60 years for the conviction for assault with intent to rob; a concurrent term of 45-to-96 months for the body-armor convictions; and a mandatory term of 2 years for each of the felony-firearms convictions, to be served concurrently with each other but consecutively to all other counts. The Michigan Court of Appeals affirmed petitioner's convictions and sentences in an unpublished opinion issued on September 18, 2007, and the Michigan Supreme Court denied an application for discretionary appeal on January 8, 2008. This timely habeas corpus action followed.

The amended habeas corpus petition (docket # 4) and supporting brief (docket # 2) raise three grounds for relief, each of which was raised and rejected in the Michigan appellate courts:

(1) Petitioner's Sixth Amendment right to a jury drawn from a fair cross-section of the community was abridged because there was an insufficient number of minorities in his jury venire.

(2) The trial court abused its discretion when it allowed the admission of a videotape of petitioner "rapping."

(3) Petitioner's counsel was constitutionally ineffective for (a) failing to object to misidentification by witnesses, (b) inadequate cross-examination of the crime scene technician and a police officer, (c) failing to object to improper final argument, and (d) failure to investigate and to present a defense, and (3) failure to file an interlocutory appeal.

District Judge Robert Holmes Bell has referred this matter to me for review of the trial court record and issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Cases in the District Courts. Upon review of the record, I conclude that petitioner's claims are insubstantial and recommend that the petition for habeas corpus relief be denied on its merits.

## Proposed Findings of Fact

### A. Trial Court Proceedings

The state-court prosecution arose from a series of crimes that occurred in the City of Grand Rapids on the evening of December 22, 2004. Four women, two young men, and five children were present in a house on Francis Avenue in Grand Rapids when two African American males wearing masks kicked open the front door and entered the house. One of the assailants ordered the four women to the ground and held them at gunpoint. The robbers took several items from the women, including a cell phone, money, and jewelry. Several police officers arrived at the scene, and the two men ran from the rear of the house. One of the men brandished a firearm in his left hand, shooting at Officer Jason Lowrie several times. Officer Lowrie sustained a serious gunshot wound through his shoulder and into his chest. A second bullet struck Lowrie in the chest from nearly point blank range, but his life was saved by a metal plate in his bullet-proof vest. The officer returned fire and believed that he hit his assailant. After the shooting, Officer Keith Hefner, while parked in an unmarked vehicle, observed an African American male carrying a firearm. Officer Hefner left his vehicle and ordered the man to drop his weapon. The man shot at Officer Hefner, who returned fire.

Later that night, an African American male with a handgun kicked open the back door of a house on Collins Avenue occupied by Bassie Cummings and Doris Morgan. The assailant held the elderly couple at gunpoint while he removed a bulletproof vest and made several phone calls, parts of which were overheard by the captives. Ms. Morgan testified that she heard the assailant address his "Mom" on the phone. After a few hours, the man forced Ms. Morgan to drive him from the house in her car. Later, both Mr. Cummings and Ms. Morgan identified petitioner as the man who invaded their home. Telephone records showed that the calls made from the Collins Avenue house during the time of the kidnaping were made to petitioner's mother and stepfather and to the co-defendant.

Subsequent investigation determined that the 9 mm bullets found near the Francis Avenue house and those found at the scene of the subsequent shooting came from the same weapon. Laboratory analysis discovered petitioner's DNA in blood found on a fence and garage near the Francis Avenue house and on the telephone in the Collins Avenue house. Petitioner was arrested, along with co-defendant Michael Jackson, two weeks later in Atlanta, Georgia.

The incident at the Francis Avenue house resulted in one charge of first-degree home invasion and charges of armed robbery of Lafaythia Garrett, Mary Ann Smith, and Sheila Gordon. The defendants were also charged with assault with intent to rob the fourth woman, Alice Olds. Petitioner's gun battles with Officers Lowrie and Hefner resulted in two charges of assault with intent to murder. The events at the home of Mr. Cummings and Ms. Morgan resulted in one charge of first-degree home invasion and two counts of kidnaping. The ten felony-firearm counts and the bulletproof vest charge were ancillary to the foregoing felony charges. Petitioner and his co-defendant, Michael Jackson, were tried separately.

Petitioner has never challenged the sufficiency of the evidence to support his convictions, either in the state appellate system or in his habeas petition. A detailed review of the trial evidence is therefore unnecessary. Only the facts germane to the habeas claims are set out below.

1. Challenge to the Venire

Trial began before Judge Redford on February 27, 2006, with jury selection. (*See* Trial Transcript (TT) I, docket # 17). At the end of the voir dire process, both the prosecutor and defense counsel informed the court that they were satisfied with the jury. (TT I, 134). The court delivered preliminary instructions. (*Id.*, 137-57). The court then excused the jury and took up the defense's objection to the venire, which had been lodged by defense counsel at a side-bar conference during the jury selection process. (*Id.*, 158-60). Defense counsel contended that only three minorities (all African-American) appeared in the 60-member panel. She argued that 3 out of 60, or 5%, was far fewer than the 13% minority population in Kent County. (*Id.*, 161). Judge Redford found that the venire contained "four and perhaps five African Americans" and one or two Hispanics. According to the 2000 census, Kent County's population was 8.9% African-American and 7% Hispanic. The court therefore found that the minority representation of the jury panel was slightly less than that in the general population. (*Id.*, 162-63). The court invited defense counsel to present proof of systemic exclusion:

> I would also note that I will provide the defense an opportunity to present evidence in this regard, should you choose to, in support of this motion to find that the venire is not appropriately composed or that there is some endemic or systemic problem in the manner in which the juries are selected here in Kent County. Such motion hearing will commence at 4 o'clock p.m. today should the defense choose to put on proofs. I am going to assume, if I don't see either of our defense counsel, that

> the defense does not choose to put on any other proofs on this matter. I will then reserve my ruling on this matter until the defense has had an opportunity to present proofs at this time.

(TT I, 163). This occurred at approximately 1:10 p.m. Defense counsel presented no proofs at 4:00 p.m.

Court reconvened the next morning. (TT II, 4). Defense counsel confirmed that she had no evidence to present of systemic exclusion. (*Id.*). The court ruled on petitioner's challenge to the array. The court articulated the test as requiring proof that (1) a distinctive group was under-represented in the venire and (2) the under-representation was the result of a systemic exclusion of the group. (*Id.*, 6). On the basis of 2000 census figures, the court reiterated its finding that African-Americans and Hispanics were under-represented. (*Id.*, 8). The court found that petitioner failed, however, to meet his burden of showing systematic exclusion. (*Id.*). Judge Redford alluded to past problems experienced in Kent County in this regard, but stated that he and his fellow judges were satisfied that the problem had been addressed successfully. "I'm very pleased to say as an officer of the court that the minority representation in our jury veneer [sic] is consistently appropriate with the numbers of the individuals who make up the percentage of the population." (*Id.*, 10). Although the minority representation for this case was "slightly under" what it should have been, the court found that the cause was not systematic exclusion. (*Id.*). Petitioner's challenge to the array was therefore overruled. (*Id.*).

2. <u>Introduction of Videotape</u>

The perpetrators of the Francis Avenue robbery wore masks during the entire incident, so the victims were unable to identify their faces. They testified, however, that one assailant was

short with a light complexion and the other was tall with a darker complexion. (*See, e.g.*, Testimony of Lafaythia Garrett, TT II at 97-98). Co-defendant Michael Jackson was tried separately, so the jury was not able to determine whether he and petitioner met the general description given by the victims at Francis Avenue.[1] To overcome this deficiency in the proofs, the prosecutor offered a videotape seized from petitioner and his co-defendant when they were apprehended in Atlanta. Defense counsel objected to the video as inflammatory and irrelevant, in part because petitioner and the co-defendant were seen rapping to a song titled "I'm a Robber." (TT III, 182-83). The prosecutor stated that the purpose of the offer was twofold: (1) to show the jury that petitioner and the co-defendant met the general description given by the Francis Avenue victims, and (2) the video showed petitioner simulating holding a gun in his left hand, consistent with the testimony of Officer Lowrie that his assailant shot him with a gun held in his left hand. (*Id.* at 183-84). Defense counsel reiterated that the video was "highly inflammatory" and that its probative value was heavily outweighed by its prejudicial value. (*Id.* at 186). Court then adjourned for the day.

At the outset of the next day's proceedings, outside the presence of the jury, Judge Redford overruled the objection. The court found that the video was relevant because it showed the physical relationship between petitioner and the co-defendant and also showed conduct consistent with brandishing a firearm with petitioner's left hand. "I believe that it is probative of demonstrating a number of facts in issue, which are in controversy; that is, the identity of the individuals who participated, the ability of the defendant to brandish a firearm with his left hand and to discharge rounds down range should he determine that that is what in fact he is doing, and the relative size

---

[1] Petitioner did not wear a mask during the Collins Avenue home invasion and was positively identified by both victims.

between Mr. Jackson and Mr. Nelson." (TT IV, 6-7). Only a portion of the videotape was ultimately shown to the jury, and it was played with the audio turned off, so that jurors did not hear any of the allegedly inflammatory lyrics of the rap song. (*See* TT V, 136-37).[2]

The jury found petitioner guilty of all charges on March 6, 2006. On April 12, 2006, Judge Redford sentenced petitioner as a third habitual offender to the prison terms identified on pages 1 and 2 above.

**B. Appellate Proceedings**

Petitioner appealed as of right to the Michigan Court of Appeals. His appointed attorney raised two grounds for relief: (1) denial of petitioner's Sixth Amendment right to a jury drawn from a fair cross-section of the community and (2) trial court error in admitting the allegedly inflammatory videotape. (*See* Appellant's Brief at i, found in Court of Appeals record, docket # 27). Petitioner filed his own brief *in pro per*, as allowed by Standard 4 of Administrative Order 2004-6 of the Michigan Supreme Court. The *pro se* brief (submitted in this court by petitioner and found at ID#s 67-78) raised ineffective assistance of counsel arising from five alleged failures of counsel at trial.

By *per curiam* opinion issued on September 28, 2007, a panel of the Michigan Court of Appeals rejected all appellate challenges and affirmed petitioner's conviction. Addressing counsel's Sixth Amendment challenge to the jury venire, the court articulated the three-part test established by the United States Supreme Court in *Duren v. Missouri*, 439 U.S. 357, 364 (1979) (Op., 2). The appellate court accepted Judge Redford's findings concerning the under-representation

---

[2] The facts germane to petitioner's claim of ineffective assistance of counsel will be recounted in the Discussion section.

of minorities on petitioner's panel, but rejected petitioner's Sixth Amendment challenge for his failure to satisfy the remainder of the *Duren* test. Specifically, petitioner had not established a "general" under-representation of minorities on Kent County jury panels, nor did he satisfy the requirement of showing systematic exclusion. (Op., 2-3).

The court reviewed petitioner's challenge to the introduction of the "rap" videotape for abuse of discretion, as counsel had presented the claim only as an issue of state-law evidence without constitutional implications. The court found that the challenged evidence was "relevant to establishing defendant's identity as the person who invaded the Francis Street house and who shot at Officers Lowrie and Heffner." (Op., 3-4). The court further found that the evidence was relevant to show that petitioner was left-handed. Therefore, the videotape did not constitute "other acts" evidence under Mich. R. Evid. 404(b). The video was properly admitted, and its probative value far outweighed any prejudicial effect. (Op., 4).

The court then considered petitioner's *pro se* challenge to the effectiveness of counsel. The court first noted that petitioner had failed to move for a new trial or an evidentiary hearing on the issue, so that review would be limited to the existing record. The court rejected each of petitioner's claims. First, the court found that an objection to the identification testimony given by Bassie Cummings would have been futile, as there was no evidence to support petitioner's assertion that Cummings was coerced by the prosecution or that his testimony was internally inconsistent. (Op., 4). Second, the court rejected petitioner's claim arising from counsel's decision not to cross-examine the evidence technician, finding that the matter was one of trial strategy and that petitioner had failed to establish what, if anything, would have been accomplished by cross-examination. The court found that petitioner was not prejudiced by allegedly improper statements

made by the prosecutor in final argument and that the trial court had cured any potential for error in its instructions. The court therefore found that counsel was not ineffective for failure to object. The court rejected petitioner's assertion that counsel was ineffective for failure to investigate, for petitioner's failure to even allege the existence of other witnesses or to demonstrate the content of their expected testimony. (Op., 5-6). Finally, the court rejected petitioner's request for a remand, as petitioner failed to support his request with an affidavit demonstrating the facts that would be elicited at such a hearing, as required by Michigan law. (Op., 6).

Petitioner filed a *pro se* application for leave to appeal to the Michigan Supreme Court. By standard order entered January 8, 2008, the court denied leave to appeal. (*See* Michigan Supreme Court record, docket # 27).

Petitioner initiated this timely habeas corpus proceeding by petition filed on April 6, 2009. The *pro se* petition and supporting brief raise the same two issues asserted by counsel in the Michigan Court of Appeals, as well as the claims of ineffective assistance of counsel raised in petitioner's *pro se* brief.

**Applicable Standard**

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell*

*v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 130 S. Ct. 1855, 1862 (2010). "AEDPA requires heightened respect for state court factual and legal determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ((“[A]ny claim that was adjudicated on the merits in State court proceedings’ is subject to AEDPA deference.")(quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010). "Section 2254(d)(1)'s ‘contrary to’ and ‘unreasonable application’ clauses have independent

meaning. A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule differently than the [Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. at 694 (citations omitted). A federal court may grant relief under the "unreasonable application" clause if that state court correctly identifies the governing legal principle from Supreme Court decisions, but unreasonably applies it to the facts of the particular case, or if the state court unreasonably extends a legal principle from Supreme Court precedent to a new context where it should apply or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010).

## **Discussion**

### I. Sixth Amendment Fair Cross-Section Claim

The Sixth Amendment, which guarantees trial by jury, forbids racial discrimination in the selection of jurors and requires the jury venire from which the trial jury is selected to represent a "fair cross-section of the community." *Duren v. Missouri*, 439 U.S. 357, 364-65 (1979). To establish a *prima facie* violation of the fair-cross-section requirement, a criminal defendant must show that (1) the group allegedly excluded is a "distinctive" group in the community; (2) the group was not fairly represented in the venire from which the petit jury was chosen; and (3) the under-representation resulted from a systematic exclusion of the group in the jury selection process. *Duren*, 439 U.S. at 364. A defendant need not be a member of the under-represented group to have standing to raise the claim. *See Powers v. Ohio*, 499 U.S. 400, 413-16 (1991). Petitioner's counsel raised the

fair-cross-section challenge in a timely application to the trial judge, made before the jury was sworn. Judge Redford found that both African-Americans and Hispanics were under-represented in the venire and that these groups were distinctive within the meaning of *Duren*. He gave defense counsel an opportunity to make a factual record on the third element of the *Duren* test, but counsel did not do so. On this basis, Judge Redford found that petitioner had not established a *prima facie* case, for lack of evidence that the under-representation resulted from a systematic exclusion of African-Americans and Hispanics from the jury selection process.

On appeal, the Michigan Court of Appeals directly addressed this claim, citing the Supreme Court's decision in *Duren* as establishing the applicable test. (Op., 2). As had the trial judge, the appellate panel found that petitioner failed to meet the third element of the *Duren* test, for lack of proof of a "problem inherent in the selection process that results in systematic exclusion." (Op., 3). Because the state Court of Appeals directly addressed this constitutional claim and articulated the correct constitutional standard, its decision is entitled to deference under AEDPA. Petitioner may prevail only if he shows that the decision of the Court of Appeals is contrary to or represents an unreasonable application of the holding in *Duren* or other Supreme Court decisions.

Petitioner obviously failed to present any proof to the trial court that would support a finding of systematic exclusion. Nevertheless, petitioner argues that this court should find systematic exclusion of African-Americans and Hispanics on the basis of historical problems in the Kent County jury selection process that were the subject of previously litigated cases. The first problem arose in the early 1990s, when Kent County used a unified jury selection system for the district courts and circuit court. Under this system, eligible jurors were first assigned to their local district court venires, with the remaining prospective jurors assigned to the circuit court panels. This

system was challenged in the state and federal courts on the theory that it resulted in "siphoning" most minorities into district court panels, thereby causing a systematic under-representation in the circuit court. Diapolis Smith, who was convicted of murder in Kent County in 1993, challenged the makeup of his jury venire under this theory. The Michigan Supreme Court found that Smith failed to prove that this system resulted in racial disparities. *People v. Smith*, 615 N.W.2d 1, 3 (Mich. 2000). On habeas corpus review, the Sixth Circuit Court of Appeals determined this assignment system resulted in systematic exclusion of minorities from Kent County juries. *Smith v. Berghuis*, 543 F.3d 326 (6th Cir. 2008). A unanimous Supreme Court reversed the Sixth Circuit decision, finding that no clearly established decision of the United States Supreme Court supported the Sixth Circuit's determination. *Berghuis v. Smith*, 130 S. Ct. 1382 (2010). Most germane to the present case, however, is the uncontested fact that the Kent County Circuit Court abandoned the challenged assignment system in October of 1993. 130 S. Ct. at 1389. As petitioner was not tried until the year 2006, he cannot possibly rely on a jury assignment system abandoned thirteen years earlier to show systematic exclusion of minority jurors in his trial.

Petitioner also relies on a jury assignment problem experienced by the Kent County courts from April 2001 to July 2002. This problem was caused by a computer programming error that resulted in most jurors being summoned from suburban areas, rather than urban areas that tended to house more minority residents. The circumstances surrounding this problem have been examined in detail by both the state courts, *see People v. Bryant*, 796 N.W.2d 135 (Mich. Ct. App. 2010), and federal habeas courts, *see, e.g., Ambrose v. Booker*, 781 F. Supp. 2d 532 (E.D. Mich. 2011); *Parks v. Warren*, 773 F. Supp. 2d 715 (E.D. Mich. 2011). Those courts have found a systematic exclusion of minorities from jury venires arising from this computer programming error. It is undisputed,

however, that the error was corrected no later than July 2002 and that the August 2002 jury selections were drawn from the county as a whole. *See Bryant*, 796 N.W.2d at 143-44; *Ambrose*, 781 F. Supp. 2d at 538-39. Petitioner was tried in the year 2006, four years later.

When faced with petitioner's Sixth Amendment claim, Judge Redford handled the matter in an exemplary fashion. He made findings concerning the composition of the jury array on the basis of personal observation and then granted defense counsel an opportunity to make an evidentiary record concerning the cause for the disparity observed. Defense counsel presented no proofs. The trial court denied the challenge to the jury array on this basis, as did the state Court of Appeals. A criminal defendant clearly has the burden of showing each element of a *prima facie* case under the *Duren* test, including that the perceived under-representation resulted from a systematic exclusion in the jury selection process. *See Duren*, 439 U.S. at 364; *United States v. Allen*, 160 F.3d 1096, 1104 (6th Cir. 1998). Petitioner clearly failed to meet this burden in the state courts. Now, on habeas corpus review, he attempts to rely on two historic jury selection problems which, although serious at the time, were both remedied years before petitioner's trial. Petitioner has failed to establish any factual basis for a finding of systematic exclusion of minorities from his jury panel. His Sixth Amendment challenge must therefore be rejected.

## II. Evidentiary Ruling

On direct appeal, petitioner's counsel challenged the introduction of the "rap" videotape as improper bad acts evidence, admitted in violation of Mich. R. Evid. 404(b). The state Court of Appeals rejected this contention, finding that the trial judge did not admit the video as evidence of prior bad acts under Rule 404(b), but as evidence relevant to contested issues in the case

such as identity and petitioner's use of his left hand. The appellate court analyzed the issue under state law alone, as petitioner's counsel raised no constitutional challenge to the admission of this evidence.

The extraordinary remedy of habeas corpus lies only for a violation of the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction" because "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Webb v. Mitchell*, 586 F.3d 383, 397 (6th Cir. 2009); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

Judge Redford's admission of the videotape frames a pure issue of state law, which is unreviewable in habeas corpus. Petitioner did not cite in the state courts, and does not cite in this court, any Supreme Court decision that would call into question the constitutional propriety of admitting this evidence, which both the trial court and the state appellate court found was directly relevant to issues in the case. Even if the evidence had been admitted under state evidence rule 404(b) (which it clearly was not), the Sixth Circuit has held that there is "no clearly established

Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

Petitioner's second claim for habeas corpus relief does not implicate any clearly established constitutional right. It must therefore be rejected on its merits.

**III. Ineffective Assistance of Counsel**

In the state appellate courts, petitioner raised five vague and factually unsupported claims of ineffective assistance of trial counsel. The state Court of Appeals found that appellate review was limited to the facts appearing of record, because petitioner had failed to move for remand for an evidentiary hearing as required by state law. *See People v. Ginther*, 212 N.W.2d 922, 925 (Mich. 1973). Reviewing each allegation of attorney error on the basis of the facts in the record, the appellate court found no Sixth Amendment violation. On habeas corpus review, petitioner seeks an evidentiary hearing, arguing that the state Court of Appeals erred in not affording him a hearing. Furthermore, he challenges the substance of the Court of Appeals decision as an unreasonable application of federal law. Neither of petitioner's contentions is meritorious.

A. Request For Evidentiary Hearing

Evidentiary hearings are not mandatory in § 2254 cases, but are held at the discretion of the court. *See Robinson v. Howes*, 663 F.3d 819, 823-24 (6th Cir. 2011). Section 2254(e)(2) limits the circumstances under which a federal district court may grant an evidentiary hearing to a habeas corpus petitioner. Section 2254(e)(2) provides:

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

> (A) the claim relies on-
>
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

In *Williams v. Taylor*, 529 U.S. 420, 434-35 (2000), the Supreme Court interpreted the opening clause of § 2254(e)(2) to contain its own "diligence" requirement, separate from § 2254(e)(2)(A)(ii). *Hutchison v. Bell,* 303 F.3d 720, 729 (6th Cir. 2002) (citing *Williams*, 529 U.S. at 434-35). The "failed to develop" clause means:

> not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts. The purpose of the fault component of "failed" is to ensure the prisoner undertakes his own diligent search for evidence. Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court . . . .

*Hutchison,* 303 F.3d at 729 (citing *Williams,* 529 U.S. at 435); *accord Getsy v. Mitchell*, 495 F.3d 295, 310-11 (6th Cir. 2007) (*en banc*). The test for "fail[ure] to develop" is defined as a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel" in his or her attempts to discover and present a claim in the state court proceedings. *McAdoo v. Elo*, 365 F.3d 487, 500 (6th Cir. 2004) (citing *Williams*, 529 U.S. at 432). Comity requires that the state courts have the first opportunity to review a petitioner's claim. *Id.* The *Williams* Court further explained:

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error. If the prisoner fails to do so, himself or herself contributing to the absence of a full and fair adjudication in state court, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.

529 U.S. at 437.

Under *Williams*, a finding of diligence "depends upon whether the petitioner made a reasonable attempt, in light of the information at the time, to investigate and pursue claims in state court." 529 U.S. at 435. "At a minimum," diligence requires that the prisoner "seek an evidentiary hearing in state court in the manner prescribed by state law." *Williams*, 529 U.S. at 437. Thus, seeking an evidentiary hearing in state court is necessary, but not always sufficient, to show diligence. *See Cannon v. Mullin*, 383 F.3d 1152, 1176 (10th Cir. 2004) (seeking evidentiary hearing in state court does not *ipso facto* establish diligence). Rather, Petitioner must also show that he pursued the factual basis of his claim in a reasonable and timely manner. *Id.*; *see Dowthitt v. Johnson*, 230 F.3d 733, 758 (5th Cir. 2000) ("Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim."); *Jennings v. Renico*, No. 1:03-cv-611, 2005 WL 2679778, at * 3 (W.D. Mich. Oct. 20, 2005).

Petitioner asserts in this court that the Michigan Court of Appeals mishandled his request for an evidentiary hearing and clearly erred in its findings. Petitioner is incorrect. The state Court of Appeals correctly found that petitioner "failed to move for a new trial or an evidentiary hearing" as required by *People v. Ginther*, the governing Michigan authority. (Op., 4). The record clearly supports this finding. The trial court record contains no post-trial motion for an evidentiary hearing, nor does the appellate record contain one. Petitioner's Standard 4 *pro se* brief did contain

two perfunctory requests for an evidentiary hearing, buried in the text of the brief. (*See* ID#s 72, 78). The state Court of Appeals did not ignore this request. Rather, the court noted the request and denied it on its merits:

> Lastly, we note that defendant has requested from this Court an order for remand for further fact finding. However, because defendant has not presented any evidence or an affidavit demonstrating that facts elicited during an evidentiary hearing would support his claims, we decline to order a remand. MCR 7.211(C)(1)(a)(ii).

(Op., 6). The Michigan Court Rule cited by the appellate court plainly requires that a request for remand must identify a precise issue on which remand is sought and that the request "must be supported by affidavit or offer of proof regarding the facts to be established at a hearing." MICH. CT. R. 7.211(C)(1). Petitioner presented the Michigan Court of Appeals with neither an affidavit nor an offer of proof in support of any of his claims of ineffective assistance of counsel. Consequently, under settled Supreme Court authority, petitioner cannot be deemed diligent, because he failed to seek an evidentiary hearing in state court "in the manner prescribed by state law." *Williams*, 529 U.S. at 437. Where, as here, a litigant makes a bald request for remand without providing the appellate court any reason to believe that relevant facts would be developed by an evidentiary hearing, the state courts routinely deny remand on the basis of Rule 7.211(C)(1)(a)(ii). *See People v. Williams*, 616 N.W.2d 710, 715 n.4 (Mich. Ct. App. 2000); *see also People v. Ivory*, No. 300861, 2011 WL 6279243, at * (Mich. Ct. App. Dec. 15, 2011) (*per curiam*); *People v. Lucas*, No. 280417, 2009 WL 211896, at * 5 (Mich. Ct. App. Jan. 29, 2009) (*per curiam*); *People v. Nelson*, No. 269958, 2007 WL 2712086, at * 6 (Mich. Ct. App. Sept. 18, 2007) (*per curiam*). Because petitioner has not met the diligence requirement of 28 U.S.C. § 2254(e), he is not entitled to an evidentiary hearing in this court. In such circumstances, the habeas court must limit its review "to the record that was

before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011).

B. Merits

Petitioner's claims of ineffective assistance of counsel are measured under the standards established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness and (2) that counsel's deficient performance prejudiced defendant resulting in an unreliable or fundamentally unfair outcome. *Strickland v. Washington*, 466 U.S. at 687-88. In adjudicating the first prong of the standard, the court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. The court should recognize that counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The Sixth Amendment is violated only if counsel's acts or omissions "were outside the wide range of professionally competent assistance." *Id.* Strategic choices after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable." *Id*. To prevail on the second prong, petitioner must demonstrate a "reasonable probability" that the result of the trial would have been different but for counsel's errors. *Id.* at 694. To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see Premo v. Moore*, 131 S. Ct. at 739; *Otte v. Houk*, 654 F.3d 594, 601 (6th Cir. 2011).

Because the state Court of Appeals directly addressed petitioner's claims of ineffective assistance of trial counsel, its decision must be afforded deference under AEDPA. *Premo v. Moore*, 131 S. Ct. at 740. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Harrington v. Richter*, 131 S. Ct. at 786-87; *Bell v. Cone*, 535 U.S. at 698-99. Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. at 699. This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Recent Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. at 123; *see Premo v. Moore*, 131 S. Ct. at 740; *Harrington v. Richter*, 131 S. Ct. at 788. Furthermore, the findings of historical fact made by the state courts are presumed to be correct, in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (*en banc*). None of petitioner's Sixth Amendment claims withstands scrutiny under this standard of review.

Petitioner first faults counsel for failure to object to the in-court identification made by victim Bassie Cummings. Mr. Cummings testified that the man kicked in his door and pointed a gun at him. (TT IV, 14). At first, he thought it was his son, but then turned around. "I didn't know who it was. Still don't to today." (*Id.*, 15). He then identified petitioner as the person who

broke into his house. (*Id.*, 16). Defense counsel stated that she had no objection to the identification. (*Id.*, 16-17). Petitioner argues that counsel was ineffective for failing to challenge the in-court identification, asserting that the victim's description in his police statements and court testimony were inconsistent, that he "clearly seemed to be trying to change his testimony" and that the victim had been acting under some sort of coercion. He asserts that counsel's failure to object deprived him of the opportunity "to have the testimony struck, or at a minimum, to receive a curative instruction," and that counsel should have moved to suppress the identification. The state Court of Appeals found no evidence of duress or coercion. The court further stated that the record showed that Cummings did not know the man who invaded the house at the time of the crime but was able to identify petitioner after the fact. (Op., 4).

The conclusions of the state appellate court clearly pass muster under the AEDPA standard, as they are supported by the record. Furthermore, a subsequent decision of the United States Supreme Court renders petitioner's argument meritless. In *Perry v. New Hampshire*, 132 S. Ct. 716 (2012), the Court held that the Due Process Clause does not require preliminary judicial inquiry into the reliability of eye witness identification unless the identification was procured under unnecessarily suggestive circumstances arranged by law enforcement officers. In the absence of official misconduct, challenges to the reliability of eye witness identification are matters for the jury to determine on the basis of the evidence, and do not require previous judicial screening on due-process grounds. "The fallibility of eye witness evidence does not, without the taint of improper state conduct, warrant a due-process rule requiring a trial court to screen the evidence for reliability before allowing the jury to assess its creditworthiness." 132 S. Ct. at 728. Under *Perry*, petitioner cannot possibly meet the prejudice prong of the *Strickland* standard, because his counsel's failure

to move for suppression of the identification or to object to the identification at trial did not deprive petitioner of a fair trial. The question of the reliability of the in-court identification was one for the jury in the absence of official misconduct, and petitioner was not entitled to a ruling from the trial judge on the issue.[3] The Supreme Court's decision in *Perry* dictates a finding in this case that defense counsel's failure to challenge the identification under general principles of "reliability" could not possibly have prejudiced petitioner, because he has no right to a judicial determination on this issue, even if such a right may have existed in 2006. Moreover, because petitioner's blood was found in the house occupied by Mr. Cummings, any deficiency in his eye witness testimony could not have been outcome-determinative.

Petitioner next argues that counsel was ineffective in his cross-examination of witness Gretchen Ross, a crime scene technician at the Grand Rapids Police Department. Ross's brief testimony was foundational in nature, of the type often not subjected to any examination by defense counsel. She laid the foundation for admission of a number of items of evidence found at or around the crime scenes. (TT IV, 160-74). Although defense counsel did ask some voir dire questions during the examination, she did not cross-examine this witness. Petitioner then argues that counsel should have cross-examined Officer Lowrie (the shooting victim) about alleged inconsistencies in his trial testimony and pretrial statements. Petitioner's appellate brief asserted, without a sliver of

---

[3] Under AEDPA, the court is generally required to review the state-court decision on the basis of the law as it existed at the time of the decision. The prejudice prong under *Strickland*, however, is examined under the law at the time the ineffective assistance of counsel claim is evaluated. *See Lockhart v. Fretwell*, 506 U.S. 364 (1993). This is because the prejudice prong focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or fundamentally unfair. *Id.* at 372. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.*

evidence, that cross-examination of Ross would have shown that the DNA evidence was fabricated and that Lowrie's testimony concerning the path taken by the fleeing assailant was unreliable. On direct review, the Michigan Court of Appeals found that petitioner had not overcome the presumption that counsel's decisions were strategic in nature and that his factual assertions concerning fabrication of evidence and inconsistencies were not supported by any evidence. The court further found that the outcome of the trial was not rendered unfair by anything counsel did or did not do in cross-examining these witnesses. (Op., 4-5). The state Court of Appeals gave petitioner's fabulous assertions more attention than they deserved. The court correctly assessed the effect of counsel's alleged failures on the outcome of the trial and found them to be negligible. That conclusion easily withstands AEDPA scrutiny.

Petitioner's next claim is more substantial, but only slightly so. In rebuttal argument, the prosecutor referred to petitioner's conduct with regard to his helpless victims and then stated: "He is a bully, he's a thug, and he is a coward." (TT V, 95). Defense counsel did not object. On direct review, the Michigan Court of Appeals found no prosecutorial misconduct, observing that petitioner's actions in assaulting and terrorizing women and old people arguably made him a bully, a thug, and a coward. On this basis, the court said that the prosecutor committed no misconduct and any objection would have been futile. (Op., 5). In assessing a claim of ineffective assistance of counsel based on trial counsel's failure to object to prosecutorial misconduct, analysis of the performance prong "hinges on whether the prosecutor's misconduct was plain enough for a minimally competent counsel to have objected." *Washington v. Hofbauer*, 228 F.3d 689, 698 (6th Cir. 2000); *accord Wilson v. Bell*, 368 F. App'x 627, 636 (6th Cir. 2010). Under this standard, it is at least arguable that petitioner meets the performance prong, as these gratuitous, ad hominem

comments by the prosecutor could very well be deemed objectionable. *See, e.g., Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009) (calling the defendant a "demon" was unnecessary, unprofessional, and came close to the line of misconduct); *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988) (calling criminal defendant a "deadbeat," "thief," "creep," and "liar" objectionable). It is likely that Judge Redford would have sustained an objection and admonished the jury to disregard the insults. The Michigan Court of Appeals concluded, by contrast, that the statements were not objectionable in light of the evidence in the case. The deference due to such state-court decisions under the AEDPA standard allows the habeas court to grant relief only if the state court's holding was an unreasonable application of clearly established Supreme Court precedent, even if the habeas court concludes in its independent judgment that the state-court decision was erroneous or incorrect. *See Bell v. Cone*, 535 U.S. at 694; *Tibbets v. Bradshaw*, 633 F.3d 436, 441-42 (6th Cir. 2011). Although the finding of the Court of Appeals that the prosecutor's name-calling was not objectionable is subject to debate, it cannot be deemed an unreasonable application of any clearly established Supreme Court precedent.

Even if one concludes that defense counsel should have lodged an objection to the prosecutor's statements (and therefore failed under the performance prong of the *Strickland* test), habeas relief is unavailable, because petitioner clearly was not prejudiced. Where trial counsel is alleged to have been ineffective for failure to object to prosecutorial misconduct, the petitioner must show "a reasonable probability that but for the failure to object in this case and obtain a curative instruction, the result of the proceedings would have been different." *Wilson v. Bell*, 368 F. App'x at 636. Petitioner cannot possibly meet the prejudice prong of *Strickland* in the circumstances of this case. In order to form the basis for habeas corpus relief, prosecutorial comments must be not only

improper, but also "flagrant." In determining flagrancy, the court asks whether the evidence against the petitioner was strong, whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant, whether the remarks were isolated or extensive, and whether the remarks were made deliberately or accidentally. *See Irick v. Bell*, 565 F. 3d 315, 324 (6th Cir. 2009). The three challenged words in the prosecutor's rebuttal argument could not possibly be deemed flagrant under this standard. The evidence against petitioner (including the presence of his blood at both crime scenes, eye witness identifications by the victims at the Collins Avenue crimes, and irrefutable evidence that petitioner called his mother and stepmother during the kidnaping) was not only strong, but was overwhelming. The prosecutor's remarks likely did not mislead the jury or prejudice petitioner, as the jury was in its own position to determine whether petitioner was a thug and a coward on the basis of the evidence. Although the remarks are obviously deliberate, they were extremely isolated and probably consumed no more than five seconds of a six-day trial. Even if an objection had been lodged and was sustained, the court would have delivered a brief admonishment at most and would never have declared a mistrial on this basis. Consequently, even if petitioner's counsel should have objected to the comments, there is no likelihood that the result of this case would have been different. It is unimaginable that a jury convicted petitioner merely because the prosecutor thought that he was a bully, a thug, and a coward.

Petitioner next asserts that counsel was ineffective for failure to interview witnesses or conduct any investigation. Petitioner presented no evidence to the state courts or to this court in support of this assertion. Petitioner merely alludes to a letter from his attorney, sent in connection with pretrial plea negotiations. (ID#s 84-85). In this letter, counsel communicated the details of the prosecutor's plea offer and presented petitioner with her analysis of the benefits and drawbacks of

the proposed plea deal. In this connection, counsel stated: "At this point in time, nothing good for you can come out of having a trial. You have no viable defenses and the number of years you would save are great." (ID# 85). On this basis, petitioner argues that counsel was not interested in defending him and implies that she did nothing to prepare the case.[4] On direct appeal, the Michigan Court of Appeals rejected the claim of ineffective assistance of counsel, pointing out that petitioner could not identify any witnesses who would testify in his behalf and had not demonstrated that his trial counsel was even aware of any potential witnesses. The Supreme Court has recently emphasized that the duty to investigate is not absolute and the scope and extent of a defense lawyer's investigation depends on the circumstances of the case. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1406-07 (2011); *accord Davis v. Lafler*, 658 F.3d at 537-38. There is absolutely no evidence in this case to support a finding that defense counsel was objectively unreasonable in her preparation of the case.

Finally, petitioner faults counsel for failing to take an interlocutory appeal to challenge the trial court's denial of a motion to suppress the testimony of a forensic examiner, Joel Schultze. The Court of Appeals rejected this ground for relief, finding that petitioner failed to support this *pro se* claim either "factually or legally." (Op., 6). This disposition was undoubtedly correct, as petitioner's *pro se* appellate brief identified no error made by the trial court in disposing

---

[4] Petitioner also alludes to the fact that counsel moved to withdraw. Counsel did seek leave to withdraw, because petitioner's family was no longer able financially to retain her. (*See* ID#s 86-87). Petitioner unfairly asks the court to drawn an inference that counsel was not interested in pursuing his case. In truth, at the time the motion to withdraw was heard, Judge Redford offered to appoint the same attorney so that she could continue representation of petitioner. Counsel accepted the judge's suggestion instantly, and the court thanked counsel for continuing in the representation. (Hearing Transcript of 12/16/2005, docket # 13). Counsel's request to withdraw for financial reasons therefore provides no support for a finding of ineffective assistance.

of the motion and no prejudice arising from the failure to take an interlocutory appeal. Petitioner's presentation in this court is similarly devoid of factual or legal merit.

In summary, I find that none of the claims of ineffective assistance of trial counsel raised in petitioner's *pro se* appellate brief and repeated in this court has even facial merit. Petitioner has not shown that any act or omission of his trial counsel was professionally unreasonable or that the outcome of his criminal trial was likely affected.

**Recommended Disposition**

For the foregoing reasons, I recommend that the habeas corpus petition be denied on its merits.

Dated: February 14, 2012

/s/ Joseph G. Scoville
United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).